UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------x
UNITED STATES OF AMERICA,


      -against-                             S-2 17 CR. 434 (ARR)

JOSE MIGUEL MELENDEZ ROJAS,

                       Defendant.
-----------------------------------------------------------------x


# MEMORANDUM IN AID OF SENTENCING ON BEHALF OF DEFENDANT JOSE MIGUEL MELENDEZ ROJAS

Susan G. Kellman
*Attorney for Jose Miguel Melendez Rojas*
25 Eighth Avenue
Brooklyn, NY 11217
(718) 783-8200
sgk@kellmanesq.com

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------x
UNITED STATES OF AMERICA

      -against-                         17 Cr. 434 (ARR)

JOSE MIGUEL MELENDEZ ROJAS,

                       Defendant.
----------------------------------------------------------------x

## MEMORANDUM IN AID OF SENTENCING ON
## BEHALF OF DEFENDANT JOSE MIGUEL MELENDEZ ROJAS

### INTRODUCTION

JOSE MIGUEL MELENDEZ ROJAS, was brought to the United States, and specifically to the Eastern District of New York on August 15, 2019. Following a jury trial, he was convicted on Counts 1, 2, 3, 4, 5, 10, 11, 12, 15 & 16, on March 13, 2020. Mr. Melendez Rojas will appear for sentencing before this Honorable Court for sentencing, after serving more than two years at MDC.

Based upon all of the relevant sentencing factors, including the fact that the past two years at MDC, each of which has been particularly oppressive in light of what now appears to be the seemingly untamable Covid pandemic, he respectfully requests that your Honor consider imposing a below Guidelines sentence. It is respectfully submitted that such a sentence is "sufficient but not greater than necessary" to achieve the goals of sentencing set forth by statute.

Mr. Melendez Rojas intends to appeal his conviction. As such, there are a number of facts outlined in the offense conduct section of the Pre-Sentence Report

("PSR") to which he objects; however, we have elected not to contest these facts at sentencing so as not to compromise any potential appellate arguments and/or remedies. However, our failure to raise these objections to the PSR should not be construed as a waiver of Mr. Melendez Rojas' right to contest these facts on appeal.

## I.      Legal Framework

As the Supreme Court has repeatedly explained, "a district court should begin all sentencing proceedings by correctly calculating the applicable Guidelines range. As a matter of administration and to secure nationwide consistency, the Guidelines should be the starting point and the initial benchmark." *Peugh v. United States*, 569 U.S. 530, 133 S. Ct. 2072, 2080 (2013) (quoting *Gall v. United States*, 552 U.S. 38, 49 (2007)). After correctly calculating the Guidelines range, the Court must next consider the statutory factors laid out at 18 U.S.C. § 3553(a). *Gall v. United States*, 552 U.S. at 49. A district court may not "presume that a sentence within the applicable Guidelines range is reasonable." *Nelson v. United States*, 129 S. Ct. 890, 892 (2009) (per curiam). Rather, sentencing courts, after calculating the appropriate Guidelines range, must consider the § 3553(a) factors, make an individualized assessment, and impose a sentence that is "sufficient, but not greater than necessary" to meet the objectives of sentencing. See 18 U.S.C. § 3553(a); *Gall v. United States, supra*.

The § 3553(a) factors include, among other things:

    a. the nature and circumstances of the offense and the history
       and characteristics of the defendant; [and]
    b. the need for the sentence imposed:

(A) to reflect the seriousness of the offense, to promote respect

for the law, and to provide just punishment for the offense;

(B) to afford adequate deterrence to criminal conduct;

(C) to protect the public from further crimes of the defendant;

(D) to provide the defendant with needed educational or

vocational training, medical care, or other correctional treatment in the most effective

manner; . . . [and]

(E) to avoid unwarranted sentence disparities . . .

The Defendant respectfully submits that, taken together, the §3553(a) factors

in this case weigh in favor of a downward variance.

## SECTION 3553(a) FACTORS AND AN APPROPRIATE SENTENCE

1. THE NATURE AND CIRCUMSTANCES OF THE OFFENSE CONDUCT AS TO JOSE MIGUEL MELENDEZ ROJAS

The offense conduct as to Jose Miguel Melendez Rojas is amply set forth in

paragraphs 86 through 95, and, owing to potential appellate issues are not

challenged in this submission.

2. HISTORY AND CHARACTERISTICS OF MIGUEL MELENDEZ ROJAS

Jose Miguel Melendez Rojas was born on May 8, 1976, in Pueblo, Mexico.

Currently, Mr. Melendez Rojas' father, who suffers from two seriously debilitative

illnesses – diabetes and Parkinson's Disease – lives alone in Tenancingo, Mexico,

following the death of his wife, and my client's mother, because of complications

related to diabetes. Mr. Melendez Rojas' mother, Isabel Rojas Torres, died in

February, 2019, just a few months after my client was brought from Mexico to the United States.  Mr. Melendez Rojas suffers daily from the guilt arising from his absence from his mother's life when she needed family and from his inability to help his ailing father. His guilt is compounded by the fact that his brother Megdeleno Melendez Rojas, who previously resided in New York City, where he was employed in a market, with his wife and three children, for thirteen years, was compelled to return to Mexico to care their father.

Jose Miguel Melendez Rojas was raised in abject poverty in Mexico. He explains that he had to leave school when he was 10 years old because his family could no longer afford to pay for his education. Immediately thereafter, Jose Miguel began working in a factory – at the age of 10. Later, but while still a child, he also worked in agriculture – where he spent a grueling 10-15 hours/day harvesting crops that did not belong to him or his family.

Paragraph 208 of the PSR records that Mr. Melendez Rojas denied any physical abuse as a child. When questioned about his brother Rosalio's statements to Probation he explained that he was too embarrassed to discuss the extent of the physical and emotional abuse that he and his siblings suffered as children, at the hands of their parents. Generally, he explained that the abuse was occasioned by his failure to work sufficient hours or earn sufficient money to contribute to the family, during his childhood – from the age of 8 until he was old enough to leave home.

Mr. Melendez Rojas was married early in his life. That marriage produced a son, Miguel Melendez Romero, who today is 23 years old. He resides in Tenancingo,

Mexico, in a house that my client built. A house that my client hopes to one day return to.

### Miguel Melendez Rojas' Life Since His Arrival in the Eastern District

The PSR reports that Mr. Melendez Rojas "has not taken any educational or vocational classes" while incarcerated at the MDC. While this is a true statement, it doesn't go quite far enough given that: (1) inmates who are illegally in the U.S. are not eligible to participate in virtually any courses offered at the MDC; (2) virtually all classes are offered in English and Mr. Melendez Rojas speaks no English; and (3) 18-months of his incarceration at the MDC has been during the Covid-19 pandemic, when there was very little for any inmate to do beside sit, wait and pray that you're going to get fed and that you're not the next inmate with Covid to be stuffed into the SHU and ignored.

### 3. Inhumane Conditions at MDC

Mr. Melendez Rojas has spent more than two years at the MDC. While counsel recognizes that the goal of a federal prison is not to mirror Club Med, the inmates at MDC have suffered through frigid winter temperatures without heat and other necessities including adequate safety, food, warmth, exercise, hygiene and medical care.

Problems with the heat and electrical systems were both well-known and constant last winter – and the winter before that. The general failure of the MDC's infrastructure has been widespread for years and continues to this day. Lest we not forget, this is a facility whose helm was occupied by Antonia Ashford, the associate

warden who dealt with her stresses by shooting her husband through the face and killing him – after a tough day at the office.

When the facility was without heat and electricity, Mr. Melendez Rojas would sit in his cell, in the dark, shivering in his bed, grateful that he was able to secure a blanket. Other conditions that he faced included no soap, no hot water for showers or personal hygiene, cells with malfunctioning toilets that didn't flush for days (or weeks) at a time and no access to hot meals – for months at a time. And, at least to date inexplicably, during the pandemic, all forms of soap – whether for personal hygiene or washing the bathrooms, were removed from every unit of the MDC – the reason – remains a mystery.

Additionally, owing to the pandemic, the MDC instituted a policy requiring lockdowns – 24/7 – probably because they did not have adequate masks and because even now that masks are somewhat available, many guards and many more inmates remain unmasked and unvaccinated.  These lockdowns have gone on for more than a year; and, inmates have been forced to share masks or use their underwear or socks as face protectors, to try to protect themselves from the Covid-19 virus. Sadly, it is quite impossible to understand how a country as great as the United States can incarcerate human beings without heat, hot water, soap or hot meals[1].

Additionally, Mr. Melendez Rojas has worked as a unit orderly, a job which took on considerable significance during Covid because many orderlies and staff

---

[1] For more than a year, inmates at MDC have complained that bologna sandwiches – in lieu of actual food – were simply thrown through the slots in their cell doors or spread out in a communal area – left for the grabbing – on a first come first grab basis.

refused to venture into certain units. That said, Mr. Melendez Rojas work as an orderly has required him to visit most units at the MDC – and he did his job without complaint. It is worth noting that a search of the BOP's SENTRY database indicates that Mr. Melendez Rojas has not had any disciplinary issues while housed at MDC.

Mr. Melendez Rojas is currently subject to removal from the United States upon completion of his sentence, and is subject to an ICE detainer.

It is respectfully requested that your Honor consider the conditions throughout his incarceration at this poorly run detention centers when calculating a just and merciful sentence.

4. **Covid-19 Pandemic**

Immediately following the verdict on March 13, 2020, in Mr. Melendez Rojas' trial, the first case of COVID-19 was diagnosed in the United States. MDC reported its first positive inmate on March 21, 2020.[2] According to the BOP, by May 14, 2020, 6 inmates and 39 staff members at MDC had tested positive for COVID-19[3].  The number of positive cases identified at the MDC has waxed and waned over the past year, with significant recent spikes in December of 2020 and February of 2021. As

---

[2] *See* CBS New York, *Coronavirus Update: Inmate At Metropolitan Detention Center Tests Positive For COVID-19*, March 21, 2020 available at
https://newyork.cbslocal.com/2020/03/21/coronavirus-inmate-tests-positive-metropolitan-detention-center-brooklyn/
[3] *See* May 14, 2020 Letter from MDC Warden to Chief Judge Mauskopf, at
https://www.nyed.uscourts.gov/pub/bop/MDC_MCC_20200514_034839.pdf; May 14, 2020

the below graphic shows, the BOP website lists 1 active prisoner case and 11 active

staff cases of COVID-19[4]:



There are approximately 1,700 incarcerated people at MDC. Since the onset of

the COVID-19 pandemic, the facility has cycled in and out of full lockdown and still

the facility is like a Covid petri dish. At first, detainees were let out of their cells for

15-20 minutes every other day to shower on Monday through Friday. Beyond this

reprieve, inmates were locked down in never-ending solitary confinement with no

access to programming and severely limited access to medical care. Throughout the

pandemic, the "panic" buttons in each cell have been disabled, making it impossible

to call for help in emergencies. During lockdowns, the only drinking water available

to inmates is from the faucet in their cells, which runs brown/rusty in many of the

units, including Mr. Melendez Rojas's. For reasons that have never been satisfactorily

explained, all soap and cleaning supplies were removed from MDC units from the

onset of the pandemic, making it impossible for prisoners to attempt to keep their

---

[4] Accessed at https://www.bop.gov/coronavirus/ on September 10, 2021.

own units and individual cells clean. Restrictions have relaxed to some degree;

however, they remain quite onerous.

Since the onset of the COVID-19 pandemic, judges in the Eastern and

Southern Districts have reduced sentences based on the pandemic and unduly harsh

pretrial conditions of detention at the MDC and MCC. *See e.g., United States v. Terrill*

*Latney,* 18 Cr. 606 (JS)(E.D.N.Y. October 5, 2020) (downward variance from 360

months  to life to 240 months for a violation of 18 U.S.C. § 1959, due in part to

MDC conditions during the pandemic);  *United States v. Juan Bravo-Mendez,* 18 Cr. 666

(DLI) (E.D.N.Y. August 28, 2020) (downward variance from 24 to 30 months to 18

months in an illegal re-entry case, taking into account the "difficult imprisonment

conditions created by the COVID-19 Pandemic" during defendant's imprisonment at

the MDC); *United States v. Americo Migliore*, 20 Cr. 131 (DRH) (E.D.N.Y. April 19,

2021) (downward variance from 57 to 71 to 40 months for a violation of 21 U.S.C. §

841 (b)(1)(C),  due in part to MDC conditions during the pandemic); *United States v.*

*Garland Battle,* 20 Cr. 349 (EK) (E.D.N.Y. April 22, 2021) (downward variance from

30 to 37 months to 27 months for a violation of 18 U.S.C. § 922(g), noting in the

Statement of Reasons that "The conditions of Mr. Battle's detention are harsher than

usual, given the ongoing pandemic."); *United States v. Saul Colon*, 15 Cr. 317 (MKB)

(E.D.N.Y. November 20, 2020) (downward variance from 100 to 125 months to 18

months for a violation of 21 U.S.C. § 841 (b)(1)(C), due in part to MDC conditions

during the pandemic.); *United States v. Juan Carlos Aracena de Jesus*, 20 Cr. 19 (PAE)

(S.D.N.Y. July 1, 2020) (substantial downward variance from 30 to 37 months to six

months in part because of the "horrific conditions" at MCC during the pandemic);

*United States v. Morgan*, 19 Cr. 209 (RMB)(S.D.N.Y. May 5, 2020)(cutting the sentence

to less than half of the low end of the Guidelines based in part on conditions at MDC

during the pandemic and condemning the conditions at MCC and MDC prior to the

current crisis); *United States v. Dayss*, 19 Cr. 863 (VSB),(S.D.N.Y. May 4,

2020)(reducing the length of the sentence in part based on conditions at MCC during

the COVID-19 crisis); and *United States v. Pierson*, 14 Cr. 855 (LTS)(S.D.N.Y. May 4,

2020)(same for defendant detained at MDC).

Some of these district courts have made explicit findings about the failures at

MDC and MCC, or have held that time spent at these facilities during COVID

should count as 1.5 to 2 times the actual time served. In *United State v. Daniel Gonzalez*,

18 Cr. 669, (JPO), Judge Oetken reasoned as follows:

> Now, the defendant has already served 24 months of detention and
> that really has been under conditions that have been extraordinarily
> harsh. Most of the time has been in lockdown conditions 23 hours a
> day, basically like solitary confinement with no access to visitors for
> most of that time, virtually limited programming. And I do believe that
> because it's been harsher than a usual period that it's more punitive,
> that it's essentially the equivalent of either time and a half or two times
> what would ordinarily be served. So I think having served 24 months is
> equivalent to having served three years. That's what I believe in terms
> of how punitive it's been and how harsh it's been. As defense counsel
> points out, he has already served the equivalent of 28 months if you
> factor in good-time credit.

(Transcript from the sentencing in *United State v. Daniel Gonzalez*, 18 Cr. 669, (JPO),

S.D.N.Y., April 2, 2021, pp. 17-18, attached as Exhibit ___.) And in *United States v.*

*Tiffany Days*, 19 Cr. 619 (CM), Judge MacMahon agreed with Judge Oetken that "we

should be providing some extra time for anybody who spent time in MCC or MDC during this lockdown," finding that the time that the defendant spent at MCC was "nothing short of inhumane" and "worse than any time that anyone thought possible in the last 400 years in a federal jail in America."[5]

More than 18 months after the onset of Covid-19, officials at the MDC have failed to handle the pandemic in the way that could be described as competent or productive. More often than not, medical treatment has been non-existent and the medical need of inmates are, more often than not, totally ignored. Even now, when we know much more about the virus than we did eighteen months ago, the guards at the MDC blatantly and arrogantly refuse to be vaccinated and/or wear masks to protect themselves or others.

We respectfully ask the Court to take into account that Mr. Melendez Rojas has been at the MDC from the onset of what now appears to be the never ending COVID-19 pandemic.

5. **GENERAL & SPECIFIC DETERRENCE & the SERIOUSNESS of the OFFENSE**

General deterrence and protection of the public are among the factors a court must make in determining an appropriate sentence. In addressing this aspect of §3553(a), the Court should consider, among other things, whether the sentence will further the aims of "general deterrence." And, while this, of course, is a laudable

---

[5] *United State v. Tiffany Days*, 19 Cr. 619 (SDNY CM) April 29, 2021, at pp. 11-12.

goal for sentencing, counsel understands that this Court is not fooled by our prison system's inability to help its population – particularly the prison population that is consists of aliens subject to deportation and/or removal – because they remain ineligible for virtually all prison programs where the aim is self-improvement or rehabilitation. Moreover, for the past several years, inmates who are subject to removal and/or deportation following their terms of incarceration are not generally housed in BOP facilities following sentencing; rather, these individuals are housed in private for-profit prisons where the conditions are worse than they are at the MCC and MDC.

The charged for which Mr. Melendez Rojas has been convicted very serious offense and there is no explaining that away. However, it is respectfully submitted that your Honor should not discount the fact that Mr. Melendez Rojas, like many of his co-defendants, was raised in rural Tenacingo, Mexico, where the only "industry" is pimping and prostitution. It is a town that suffers from extreme poverty and substandard living conditions. Indeed, many families lack running water, inside toilets, electricity and access to proper nutrition and healthcare. As a child, Jose Miguel recalls he and his siblings sleeping on the floor because they couldn't afford mattresses. At the age of 10, he was forced to leave school so that he could work in the fields and earn money to help support his family. These severe circumstances gave rise to the area's main occupation – family-run prostitution businesses.

According to Gayle Clarke, the author of *The Mexican Town Where Nearly All Boys Grow Up to Be Pimps*, published in 2016, the phenomenon of family-run

prostitution rings was recognized as legitimate family business – a practice that she

explains dates back generations. In Tenancingo, fathers pass the family connections

and business to their son, who are taught that prostitution, which is legal in Mexico,

is an acceptable source of income and lifestyle.

Unlike the United States, prostitution is not illegal in Mexico and thus, it is

widespread throughout the country. Sadly, girls who grow up in extreme poverty in

Mexico are encouraged by their own families to pursue prostitution – while they are

young enough – and, according to Ms. Clarke, it is often their brothers or fathers

who serve as their pimps.

### A DOWNWARD VARIANCE IS APPROPRIATE

Jose Miguel Melendez Rojas respectfully requests that the Court grant a

downward variance pursuant to §3553(a), in light of the fact that: (1) conditions at the

MDC – inhumane prior to the onset of what now appears to be an untamable Covid

pandemic, have only worsened, making life in the facility unimaginably difficult; and

(2) while I do not suggest for a moment that Mr. Melendez Rojas' conduct is

acceptable or even comprehensible, as a student of cultural anthropology, I am

compelled to at least ask your Honor to recognize that the conduct in which my

client engaged was not viewed as abhorrent – or even illegal – in Mexico – where he

grew up.

Being incarcerated at MDC during these past two years, has put Mr. Melendez

Rojas' life in danger on a near daily basis. When inmates are not worried about

contracting and dying from Covid-19, they are either worried about freezing to death

in the winter or suffocating from the heat and lack of air conditioning in these extremely hot summers.

## THE PARSIMONY CLAUSE

The Supreme Court and the Second Circuit have instructed the district courts to employ their "informed and individualized judgment" to reach a sentence that is "sufficient but not greater than necessary to fulfill the purposes of sentencing," as set forth in the so-called "parsimony clause" of 18 U.S.C. § 3553. In *United States v. Cavera*, the Second Circuit affirmed that Guidelines sentences are not presumed to be reasonable. 550 F. 3d 180, 189 (2d Cir. 2008). As in the pre-guideline days, district judges are one again encouraged to use their experience and judgment in determining what price each person should pay for a crime, aided by the guidelines but in no sense governed by them. On balance, it is respectfully submitted that while Mr. Melendez Rojas' actions were indeed serious, weighing all of the equities, strongly support a sentence below the Guideline range.

It is respectfully submitted that such a sentence is "sufficient but not greater than necessary" to achieve the goals of sentencing set forth by statute.

Dated:   Brooklyn, New York
          September 24, 2021

Respectfully submitted,

Susan G. Kellman

cc:      All Counsel

         Gregory Giblin, USPO

         Miguel Melendez Rojas